Judge Care.
In the year 1816, Benjamin Jones made his last will, in which he seems to have apportioned his estate with great care and deliberation among his children. They were seven in number; three sons and four daughters. Three of the daughters were married and portioned. The fourth, Martha, with the three sons, Robert, Benjamin, and Thomas, were infants. It is to these infants that the bounty of the testator was principally confined. To his sons, he gave all his land, each a tract. His slaves, he seems (so far as we may judge) to have meant to divide equally. At least, this was so, with the three youngest, Benjamin, Thomas and Martha. To Robert (the eldest, *578 as I take it) he gives his plantation in Brunswick county, including the mill, &c., and 13 slaves by name, together with stock, horses, tools, &c.; among the negroes given, are Moses, Harry and Sam. When Robert came of age, faj-her pUt jn possession of the plantation as it stood; except that he took from it several slaves, not among those he had by will given his son, and also took away Moses and Sam, two of the slaves in the will; and left Ellick, Jlggy and their child, not in the will. Harry, another slave mentioned in the will, was on the Manor plantation of the testator, when his son was invested with possession. It is stated by the executor in his answer, that the three slaves Ellick, Jlggy and their child, were intended to supply the places of Moses, Harry and Sam; and that though somewhat inferior in value, that difference was more than made up by other property left on the estate, and advanced to Robert; and further, that at the time his portion of the estate was given up to him, it was a full and equal proportion of the testator’s estate.
Things remained thus, till the death of the testator; when that took place, we are not told. He died without altering his will; and this bill is filed by Robert, to recover of the executor the three slaves Moses, Harry and Sam, claiming that Ellick, Jlggy and child, were not given in substitution of them, but in addition to them; and that he has a right to both.
The executor, by his answer, controverts this claim, contending that when the testator put the plaintiff in possession, he manifested his intention of giving off to him at once, his whole portion, by removing from the place all those slaves he did not intend for him, and leaving those he meant to give him; and that by taking away Moses, Harry and Sam, and leaving Jlggy, Ellick and child, he proved that he meant these last to stand instead of the former, and not in addition to them.
The case was set down for hearing by consent, on the bill and answer, and heard the same day.
*579 A question was raised at the bar, whether the statements in the answer were to be taken as true; a question of very little moment (in my mind) as to any influence it can have on this cause. I do not consider that the ease comes di» reolly within the letter of the rule, that where the plaintiff sets down a cause on bill and answer, he fakes the answer as true in all things. There he acts upon his right; here the matter is by consent. But, I think it within the reason of the rule. I have no doubt, that this whole proceeding was taken at once, without the regular steps, for the purpose of trying without delay, in a friendly manner, the rights of parties; and that the bill and answer were intended to present the whole case to the Court, there being, in truth, no contradiction between them as to facts. The two affidavits are merely as to the amount of the difference in value between the slaves, not as to the fact of difference. I think then that the answer must be taken as a part of the ease agreed to by the parties; that is, so far as it states facts, and so far as any extrinsic evidence can be looked to.
The great question in the cause is, was the legacy in the will, of Moses, Harry and Sam, revoked, adeemed, or satisfied, (for sometimes one term and sometimes another is used,) by the taking these slaves from the son’s plantation, when he was put into possession, and giving him Ellick, H.ggy and child ? This question is important, and I believe, in this State, of the first impression. In the English hooks, there are many cases turning upon it; and the principles, which govern it, are considered as well settled. I will cite some of those cases.
Hard v. Hurst, 2 Freem. Rep. 224. “ The defendant’s testator, by his will, gave his four daughters 600/. apiece, and afterwards married his eldest daughter to the plaintiff, and gave her 700/. portion. After that, he makes a codicil, and gives 100/. apiece to his unmarried daughters, and thereby ratifies and confirms his will, and dies; and the plaintiff preferred his bill for the legacy of 600/. given to *580 his wife by the will; and the only question was, whether the portion, given by the testator in his life-time, should be intended in satisfaction of the legacy ? And held that it should; and agreed to be the constant rule of this Court, that where a legacy was given to a child, who, afterwards, upon marriage or otherwise, had the like or a greater sum, it should be intended in satisfaction of the legacy, unless the testator should declare his intent to be otherwise.”
In Ellison v. Cookson, 1 Ves. jr. 100, Lord Thuklow, speaking on this subject, says, “The common way of arguing this, is to forget entirely the rule of law; namely, that where a legacy is given to a child, it is deemed a portion, and therefore carries with it these qualities; that it is a deliberate distribution among his children of such portions as the testator thinks fit. Crediting him for that deliberation, if he advances in his life that sum which he has adjudged to be the due and proper portion for that child, the presumption of law is, that he has satisfied that intent, and consequently, that it is no longer a ground for any further demand.”
But, though it is a presumption of law, it is not that kind of conclusive presumption, against which nothing can be said, but a presumption which the law makes upon the general facts, liable to be rebutted by evidence; and the kind of evidence for that is, any demonstration from the conduct and language of the author of both gifts, that he considered the gift by the will as still a subsisting benefit.
In Trimmer v. Bayne, 7 Ves. 508, Lord Eldon says, “ The rule is settled, that where a parent or person in loco parentis gives a legacy as a portion, and afterwards, upon marriage or any other occasion calling for it, advances in the nature of a portion to that child, that will amount to an ademption of the gift by the will, and this Court will presume he meant to satisfy the one by the other.”
The same doctrine is explicitly laid down in many other cases, as the unquestionable doctrine of equity; though some of the Judges seem rather disposed to quarrel with *581 the rule. See Twisden v. Twisden, 9 Ves. 413; Hartop v. Hartop, 17 Ves. 184; Ex parte Pye v. Dubort, 18 Ves. 140; Coop. Equ. Cas. 270, and numerous other cases.
This being the established rule, let us see whether our case be within it.
That the testator meant to dispose of his whole estate, by his will, is most apparent. He does in fact dispose of it with great deliberation, and particularity, giving to each object of his bounty all that he intended such object should enjoy. Living till his eldest son came of age, he determined, as regarded him, to do at once what he had ordained should be done after his death. In the execution of this purpose, he had a full right to change or modify any part of the gift, and no man could say, “why doest thou?” The plantation which he had devised to the plaintiff, had been for some time settled as a quarter; and there were several slaves there, more than he intended to give to the plaintiff. When he invested his son with possession of the land, slaves, stock, &o. he sent from that place to his home plantation, those slaves he meant to keep himself, and left with his son those he meant to give him. Moses, Harry and Sam, though named in the will, were not left. Moses aud Sam were sent from his son’s place to his own; and Harry was already there. But, he gave to his son three slaves not in the will, Ellicle, diggy and their child. That these were given, the bill avers, and the answer acknowledges; and they have ever since been held, and are still hold, by the plaintiff, as his property. It is agreed, that they are not, of equal value; but the answer states, that the difference iu value was more than made up by other property, and that at the lime possession was given to the plaintiff, he took a full proportion of the estate. These statements I consider as proper evidence. .Now, I ask, how this proceeding is to be explained? Can wo understand it in any other way, than that flic father was ey tablishing his son. pelting him up In the world, givingM?'. *582 his full proportion to manage for himself? Why, in this proceeding, should he withhold three of the negroes which the will had designated for his son ? Why send them away from his place, and leave three others there ? Clearly in my judgment, because he had changed his mind in this respect, and for some reason, determined to keep these slaves himself, and give his son others. . He might have many reasons for this. These slaves might suit particular purposes, important to him. He might have a particular fancy for them. His will was his law in this matter, for all were his. But, if he did not mean to change this part of his gift; if he intended these slaves still for his son; can we conceive why he should not have given them to him, when he was setting him out, and delivering to him all the rest of his portion ?
But, it was insisted, that the rule as to ademption of legacies could not apply to this case, because it is an essential ingredient in that rule, that the thing bequeathed, and the thing given, must be ejusdem generis; and it was affirmed, that no case could be produced, where a legacy of a specific thing was adjudged to be adeemed by the gift of another specific thing.
We must recollect, that this whole class of cases depends upon intention. We imply from a man’s acts, his meaning. When he gives 5001. to A., his child, by will; and after, on her marriage, advances this same sum of money; its being the same thing in amount and in kind, makes it more apparent that the gift was a consummation of the bequest: that he was performing, in his life-time, the duty towards his child, which he had set down in his will to be performed after his death. Every legacy given to a child by a parent, is considered a portion for the advancement of such child. In England, from the nature of their property, and the situation of society, these portions and legacies are almost always in money. With us, nothing is so usual as to advance children by gifts of slaves. They stand with us, instead of money. If a man were to be *583 queath ten slaves by name to his daughter, and afterwards, on her marriage, to advance to her these same slaves, nobody would deny, I presume, that this was a satisfaction of the legacy. Suppose he were to bequeath to her ten slaves, to be selected by his executor; and after, on her marriage, he were himself to select ten, and advance to her; would any body deny that this was an ademption of the legacy, especially when it was a full child’s part, and as much as he could give to any other ? Suppose a man were to bequeath to his child $ 10,000; and after, were to make to that child a deed for a tract of land, and declare in the deed, that it was in satisfaction of the legacy. All will agree, that this gift, though not ejusdem generis, would, adeem the legacy; hecause it declares the intention; and the power of the owner being plenary, that intention must prevail. It is only a means to discover that intention, where it is not expressed, that the rule of ejusdem generis is resorted to. A reference to some of the English cases will shew that this is the ground of the rule.
Hoskins v. Hoskins, Prec. in Chan. 263. A father gave his son 7501. in his will. Afterwards, he bought him a cornet’s commission, which cost 650/. It was decided, that this 650/. should be a satisfaction pro tanto for the 750/. If it be said that it was so decreed, because it was in proof, that the testator intended the 650/. should be discounted out of the legacy, and meant to have struck so much out of his will, but died before the accounts came from London, 1 answer, it still shews that intention is every thing; ejusdem generis, nothing. For, no one will contend, that the commission in the horse was ejusdem generis with the 750/.
Chapman v. Salt, 2 Vern. 646. S. devised 50l. to Mary, the wife of L. C. Afterwards, the testator gave L. C. a note for 50/. payable on demand. Objected, that the note was to one, the legacy to another. If the wife survived, she would have the legacy, and the executors >£ the husband, the note. But, it was proved, that the *584 note was intended as a satisfaction of the legacy, and the bill was dismissed; shewing still, that intention is all.
It is laid down generally, that a residuary legacy will not adeem a portion due under a settlement; because, it is entirely uncertain what that legacy may be. But, this rule, like the rest, yields to intention.
Thus in Rickman v. Morgan, 1 Bro. Ch. Cas. 63; 2 Bro. Ch. Cas. 394; to which I refer principally for the powerful argument of Lord Thurlow, on the subject of the intention of the party.
The last case l shall cite, is Bengough v. Walker, 15 Ves. 507, where it is decided, that a bequest of a share in powder works, to be made up in value 10,000/., charged with an annuity of 20/. for life, was a satisfaction of a portion of 2,000/. This certainly was not ejusdem generis; but the rule yielded to clear intention.
In the case before us, I have already stated the various considerations which tend to shew the intention of the father, in the gift of three slaves, Ellick, Aggy and child: that it could only be, to substitute them for Moses, Harry and Sam. It might, I think, be very fairly argued, that they are ejusdem generis; for, they are considered only as property, and they are property of the same kind. But, I do not think it necessary to press this point.
Upon the whole, I am clearly of opinion, that the plaintiff has no claim to Moses, Harry and Sam, the legacy being adeemed by the subsequent gift.
The County Court certainly were wrong in supposing this a case of election; but, as no election was made, and the bill was dismissed, no harm is done.
I rather think it was harsh in the Superior Court, to give costs in a case of such novelty. What was said by the testator in his last illness, I do not think of any avail. It is too vague and uncertain to rest a decree on.
*585 judge Gkeek,
Robert B. Jones filed his bill in March, 1821, against Edmund Mason, executor of Benjamin Jones, the father of the complainant, stating that the testator, by his will, dated in July, 1816, devised to him a tract of land and sundry slaves by name, (14 in number) and amongst them, Moses, Harry and Sam: that upon his coming of age, his fattier put him in possession of the land devised to him, and delivered to him the slaves bequeathed, except the three above named: that at the time of this advancement, his father, in addition to the slaves bequeathed, (with the exception of the three above specified,) advanced him other slaves, Ellic.k and Jiggy and their child, who were far short in value of the slaves Harry, Moses and Sam: that his father always intended to make an equal distribution of his estate amongst his children: that, after the publication of the will, and the settlement and advanceme?it of the plaintiff) his father’s estate had greatly increased in value, and in his opinion, the slaves bequeathed to him, with Ettick, Jiggy and their child, did not exceed a child’s part; and prays that the executor may discover, “whether the testator in his last illness, did, (when the executor was reading over the elause of bequest to the plaintiff,) ask him if the negro man Ellick was not embraced in the said clause; and whether he did not understand, that the testator’s extreme indisposition prevented from proceeding to alter his will ?”
The executor answers, that the plantation devised to the rdaintiff was settled as a quarter; and when the plaintiff attained full age, the testator invested him with the possession of the estate as it stood, except in relation to some of the negroes attached to it: that at the time of the investment aforesaid, all the negroes contained in the said legacy, with the exception of Harry, (who was on the Manor plantation of the testator) were on the quarter aforesaid, together with several other negroes: that instead ef *586 the testator (who seemed desirous to give off to the com» plainant his estate at once) sending Harry up there, he, amongst others, brought Moses and Sam to his own house, and left, from among the negroes already on that estate, three other negroes,.Ellick, Aggy and their child, which were intended as supplying the place of Moses, Harry and Sam: that this arrangement was, as he believed, so understood by all the parties. He admits, that the testator’s estate has increased in a greater ratio than the plaintiff’s; yet his was, at the time when he was invested with the possession, a full and equal proportion: that he has no doubt there was an inconsiderable difference in the value of the negroes so substituted, and those for whom they were substituted; but that this difference was greatly more than exceeded by other property left on the said estate, and advanced to the plaintiff; and he admits, that in the testator’s last illness, he asked the questions mentioned by the complainant, and indicated a desire to new-model the whole will; but he did not, in that or any other conversation, express the least wish to give to Robert either of the three negroes retained at home, but expressed a wish to give him a particular boy, in lieu of one which Robert had lost among his own.
The will, besides the plantation and the negroes, gave to Robert the stock of cattle, hogs and sheep, on the plantation, two riding horses, a black and a bay, (called his,) one bay mare and colt, one sorrel mare, two beds and furniture, and all the plantation tools on the said plantation; and after various other devises and bequests, both specific and pecuniary, he gave the residue of his estate, real and personal, to be kept together for the support of his younger children and his wife, and to be equally divided between his three younger children, Benjamin, Thomas and Martha.
Two affidavits were taken by consent on the 2Sth of February, 1821, proving that Moses and Sam were worth $200 more than Ellick, Aggy and their child.
*587 The bill, answer, will and affidavits, were filed together on the 6th day of March, 1821, and the cause immeJiately heard by consent upon these papers.
A question is made, whether, in consequence of this proceeding, the answer must be taken to be true; and I think it must. It was really bringing the cause to hearing on bill and answer. The bill and answer both stated, that the three negroes bequeathed and not delivered to the legatee, were of more value than the three delivered, which were not bequeathed; and the only purpose of the affidavits was, not to contradict the bill or answer, hut to supply a defect in both, by ascertaining the quantum oí difference in the values of these slaves.
Upon this case, both the Courts below decreed that the plaintiff was bound and entitled to elect, whether to take the three slaves bequeathed hut not delivered to him, or the three delivered hut not bequeathed to him, but could not take them all. In this respect, the decrees are clearly erroneous. If Ellick and Aggy and their child were not given, so as to vest a title in the plaintiff, then the transaction could not amount to an ademption of the legacy of the three not delivered; and in that case, he would he entitled to the slaves bequeathed, and the Court could not make it a condition upon which to give relief, that he should deliver to the executor those to which he had no title and held wrongfully; and which the executor might have, at any time, recovered by an action at law. Specific property cannot, in any case, be set off' against specific property, in a Court of Equity. If, on the other haud, Ellick, Aggy and their child, were given by the testator to the plaintiff) (as both the hill and answer virtually affirm, and therefore must be taken for true,) then it is either an ademption of the legacy as to Moses, Harry and Sam, or it is not. If it is, the will is annihilated as to them; and is as if it did not contain their names. If not, then he has a right to them under the will, and to the others under the gift. He would not, in that ease, claim under and against the will; which *588 is the only case in which a party claiming under a will, can be put to his election.
Before I proceed to examine the effect of the facts admitted in this case, it will be proper to ascertain the general rules which have been well settled, as applicable to cases like this.
The statute nowin force, passed in 1785, ch. 61, sec. 7, 12 Hen. Stat. at Large, 141, is the same in effect (but in an abridged' form,) as that of 1748, ch. 5, sec. 12, which was taken verbatim from the 22d section of the British statute of frauds of the 29th Ch. 2, and provides, that “ no will in writing or any devise therein of chattels shall be revoked by a subsequent will, codicil, or declaration, unless the same be in writing.” The object of this provision was to prohibit the revocation, wholly or partially, of a written will, by parol declarations or nuncupative dispositions, which might have been done before the statute .of frauds, even as to wills of lands. The statute of frauds, however, has never been, held to prohibit the revocation either of wills of land, or of personalty, by implications founded upon events subsequent to the making of the will; although the prohibition by the statute as to the revocation of a will of lands, is much stronger than that as to the revocation of a will of personalty; in respect to lands, the statute declaring that no will shall be revoked, in whole or in part, but by another will in writing, or by burning, cancelling, tearing or obliterating; and in respect to personalty, declaring, that no will shall be revoked in whole or in part, by another will, codicil or declaration, unless it be in writing; leaving all other modes of revocation to operate as at common law. Thus in England, the subsequent marriage and birth of a child was an implied revocation of the will, both as to real and personal property; as it was with us, (Wilcox v. Rootes, 1 Wash. 140,) until the 1st of January, 1787, when the act of 1785, ch. 61, sec. 3, took effect, by which it is provided, that a last will sind testament, made when the testator had no child living, *589 wherein any child he might have is not provided for or mentioned, if at the time of his death he leave a child, or leave his wife enseint of a child, which shall be born, shall have no effect during the life of such after-born child, and shall be void, unless the child die without having been married before he or she shall have attained the age of 21 years.
As, notwithstanding the statute, a revocation in tota might be implied from facts afterwards occurring, so a partial revocation as to any particular legacy might be implied from subsequent facts, and the acts of the testator. Thus, if a testator gave to his daughter 5001. by his will, and afterwards, on her marriage, advanced the 5001. to her, this would be an implied revocation of that particular legacy, upon a presumption of law that it was intended by the testator as a satisfaction and ademption of the legacy. But, this presumption must be founded solely upon the qualities and circumstances of the fact, without regard to the declarations of the testator; for, if the circumstances and qualities of the act were not, of themselves, sufficient to justify the presumption, then to admit the declarations of the testator to be used to supply the defect of the fact, in order to raise the presumption, would be directly against the terms of the statute. But, if the fact itself be sufficient to raise the presumption, the evidence of the declarations of the testator are admissible to rebut the presumption, and to shew that he did not intend, by the act in question, to adeem the legacy, as parol evidence is in all other cases admitted to repel a presumption. These principles arc well explained in Ellison v. Cookson, 1 Ves. jr. 100; Trimmer v. Bayne, 7 Ves. 508; Hartop v. Hartop, 17 Ves. 184. And in like manner, a particular legacy may, by implication, be adeemed in part as well as in toto, if the act of the testator be such as to shew that a subsequent advancement was intended as a satisfaction of the legacy in part.
*590 The ground, upon which the presumption of law in such cases is founded, is this. Legacies to a child are in general given, in pursuance of the natural obligation of the parent, as a provision for the advancement and establishment of the chüfj jn life; and, if in the life time of the father, the child is settled in life, by marriage, or otherwise separated from the family of the parent, and commences the business of his life, and the parent makes him substantial advancements in proportion to his ability and pre-determination as expressed in his will, he is presumed to have intended to give now what (when he made his will) he intended to give at his death, in whole or in part, according to the amount and circumstances of the advancement, rather than to have intended to abandon and violate the deliberate purpose expressed in his will, as to the distribution of his property amongst the members of his family, by giving to the child advanced an undue proportion of his estate, and more than he intended by his will, both the legacy and the advancement.
The testator, in the case at bar, left a wife and three sons, all under age when he made his will, and four daughters, of whom three were married, and had been in part advanced, and the other was an infant. To the daughters and their families, he gave money and negroes. To the sons, he gave all his land, consisting of two tracts, the quarter which he devised with the stock, &c. upon it to Robert the complainant, and that where he resided, which he divided between his two younger sons. A part of the negroes at the quarter, he bequeathed to Robert by name; and gave the balance, except those specifically bequeathed, to the families of his married daughters, together with all his undisposed of residuum, consisting of stocks, &c. to his two youngest sons and unmarried daughter, to be kept together and worked on his home plantation, for the support of his wife and three youngest children; and when Benjamin came of age or married, he was to have his part of the land, and one third of the residuary negroes, stocks, *591 iza. and the balance to be kept on that part of the land, and worked for the support of the widow and two youngest children, until Martha came of age or married; when she was to have the money given her, and a moiety of the reraainder of the negroes, and Thomas was to have the recidue of the land, negroes, &e. charged with the support of the widow.
When Robert came of age, the testator put him in possession, as his own, of all that he had devised and bequeathed to him, except the negroes in question; two of which he withdrew from the plantation given to Robert, to which they had belonged; and instead of these three negroes, he advanced to Robert three other negroes, which lived on that plantation, and other articles not bequeathed to him by the will; which, with the value of the three negroes not bequeathed, exceeded in value the three negroes bequeathed and not advanced or delivered to Robert; and this was a full and equal proportion of the testator’s estate. What the other property not bequeathed, given to Robert, besides the negroes not bequeathed, consisted of, is no! stated; but, it was probably provision to support the plantation until Robert could make a crop, which was not provided for him by the will.
These are the facts and circumstances, on which we are to say, whether a legal presumption arises, that the testator, by this gift to Robert when he came of age, intended to satisfy and adeem the legacy in ful!, and whether tV bequest is revoked by implication, or not?
I cannot resist the conviction, that such was the inter;lion of the testator. The circumstances that when his sou entnn of age, he put him immediately in the possession of all the property devised and bequeathed to him, except the three negroes, anil gave him three other negroes not bequeathed, of lesa value indeed than the others, but com ponsated in other property; the separating, at that precise time, the two negroes bequeathed, l'roin the rest, and removing them from the plantation, where they had been *592 resident and employed; as well as the separating and removing of all the other negroes not given, who were set-tied on the same plantation; indicated clearly an intention t° separate this son finally from the family of the testator, get Up jn j¡fe> and t0 advance him fully to the ex* tent intended by the father. He was doing, in his lifetime, in effect, all he had intended to do for this son by his will; and the substitution of three other negroes for the three taken away, and compensating the son for the difference in value, with other property not bequeathed, fortifies this conclusion.
This conclusion was resisted, in the argument of the cause, by the suggestion that the negroes given by the testator, were not of equal value with those given,by the will, and withheld. This objection is unfounded; for, that difference in value was made up with other property given with them.
The only real objection insisted on is, that no case has been decided, in which a gift of a specific thing has been adjudged to adeem a legacy of another specific thing; and that the rule in respect to satisfactions and ademptions, presumed from circumstances, is, that the thing given, and the thing bequeathed, should be ejusdem generis.
In cases of . this class, the question is only as to the intention of the testator, to be inferred from his acts, and not from his expressed will. It is impossible to prescribe any technical and inflexible rules governing the result of such an enquiry. Each case must depend upon its own circumstances. The rule of ejusdem generis is of some use in elucidating the enquiry into intention. If eithpr the specific thing, given by the will, or given by the testator in his life, should appear not to be intended as a portion, or as a substantial part, of the intended advancement for the establishment of the child in life, and intended as an additional manifestation of kindness, the gift of one would not adeem the other; and in England, hardly any other ease of the bequest and gift of specific articles can occur. There *593 the universal practice is to provide the portions or fortunes of younger children in money, either by will or settlement; and the obligation, when resulting from a settlement or a promise made by will, is generally satisfied by a bequest of money, or a gift of money in the life-time of the party. With us, the advancement of children is most frequently in negroes; and a bequest or gift of negroes is generally-made as an advancement for the better establishing the ehild in life; and here, a gift of negroes, in lieu of other negroes, may be considered as an ademption of the legacy, if other circumstances shew that such was the intention of the testator. These are, to all the purposes of the argument, ejusdem generis.
There are also cases in the English books, in which this rule has not been strictly adhered to. A few examples of the application of the rule, and in which it has been disregarded, will illustrate the reason and foundation of the rule.
In the case of Grave v. The Earl of Salisbury, 1 Bro. Ch. Cas. 425, it was held, that the grant of a lease for 99 years at a rent of 40/. per annum, which was worth ISO/. per annum, and money paid for repairs, and the standing erop, the commissioner estimating the value of the whole at 4,400/., was not an ademption pro tanto of a legacy of 10,000/. The Chancellor says, upon this rule of ejusdem generis, esIm the present case, it would be presuming that Lord Salisbury had the idea of a portion in his mind, when he was giving a thing not ejusdem generis. The true ground of this ease is, that the whole gift of the lease, repairs and erop, being one and the same transaction, was either intended as an advancement and ademption of the legacy pro tanto, or the testator had no such intention. If he had intended it as an ademption pro tanto, he would have fixed a value opon It, and not have left ií fo be after-wards ascertained by estimate and coujecturc. See Bengough v. Walker, 15 Ves. 507.
*594 In Holmes v. Holmes, 1 Bro. Ch. Cas. 555, it was held by the Lords Commissioners, that a legacy to a son of 500/. was not adeemed by the father’s taking him into partnership with him, in a trade in which they were to have a capital of 3000/. to be brought in equally. The father brought in the whole capital, and had said that he meant to give half the stock to his son, and so it was understood in the family; and one witness said he had given him half the stock. This was not held to be a satisfaction, not being ejusdem generis, and that it must have been the testator’s intention that he should have both..
It has also been held, that the bequest of a residue is ■not a satisfaction of a portion, for which the father,was bound, as it consists of dioses in action and is uncertain as to its amount. In such a case, when the father is under a legal obligation to pay a portion, the provision by will must be equal to the portion, and subject to no condition or uncertainty; a rule, which is not strictly applied to a case of the ademption of a legacy by a gift. For, both the legacy and the gift are purely voluntary, and the testator may substitute, if he choose, one thing for another, or a lesser for a greater value.
The only enquiry is, whether, in fact, the circumstances were such as to prove that intention. The cases above noticed, proceeded upon intention; and the difference in. the things given and bequeathed, and the uncertainty of the residue both as to the amount and time of payment, were calculated to induce a belief, that the testator had no intention to adeem the legacy, or satisfy the portion. Other cases have occurred, in which the rule of ejusdem generis has given way to the intention of the testator, inferred from the other circumstances of the case, and a residue has been considered as a satisfaction; as in Hoskins v. Hoskins, Prec. in Ch. 263, the father bequeathed to his younger son 750/. and afterwards bought him a cornet’s commission for 650/.; and this was held to be a revocation of the legacy pro tanto. In this case, it was proved that *595 she testator intended to alter his will, and deduct this from the legacy, but died before he did it. This evidence probably had no influence on the decision; for, it was clearly inadmissible, the case occurring after the statute of frauds.
In Bengough v. Walker, 15 Ves. 507, it was held, that a portion of 3000/., for which the father was bound, was satisfied by a legacy of a share in powder works, (charged by the will with the payment of an annuity of 30/.) which the testator directed should be made up in money to the value of 10,000/. The value of the share did not appear, and might have been 9,50Ql. The value of the legacy, as fixed by the testator, ascertained his intention; and in Rickman v. Morgan, 2 Bro. Ch. Cas. 394, it was held, that a residue was a satisfaction of a portion of 8,000/.; the intention of the testator being inferred from the quantum of the residue.
It seems, therefore, that the rule of ejusdem generis is not conclusive that the testator did not intend to adeem a legacy by giving another thing in his life-time; but is one (and in England, a strong) circumstance to prevent the presumption of ademption or satisfaction, yet capable of being overruled by other circumstances; and in the ease at bar, I think the manner and circumstances of the gift shew, that the intent of the testator was to give at once to the plaintiff all he intended to give him, and to substitute the three negroes and other property given, for the three negroes bequeathed and not given.
The declarations of the testator are admissible evidence to rebut this presumption. But, they were not such as to impair the legal presumption in this case. The enquiry of the testator, when the clause in the will giving the negroes to the plaintiff was read, whether Ellick and Aggy were not in it, does not prove that he wished to insert their names in addition to the others; but might have been to provide, as he had done in respect to others of his children, and as is very usual, a clause confirming the title to what lie had already given him. It is not necessary to examine *596 the other suggestions of the executor’s answer, in respect, to the testator’s intentions.
This case being one of the first impression with ns, and presenting a question of some novelty and difficulty, I tjje County Court were right in not decreeing costs to either party; but wrong, in giving the plaintiff an election; which, however, can now do no injury to the appellee; and that the decree of the Chancery Court should be reversed with costs, and that of the County Court affirmed, with costs of the Chancery Court to the appellee.